UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Hamdi Ali Osman,

      Plaintiff,

v.

Heather Weyker, in her individual capacity
as a Saint Paul Police Officer; John
Bandemer, in his individual and official
capacities as a Saint Paul Police Sergeant;
the City of Saint Paul; Robert Roes 1 – 3, in
their individual and official capacities as
supervisory members of the Saint Paul
Police Department,

      Defendants.

Case No. 16-cv-908 (JNE/TNL)
ORDER

---

Andrew M. Irlbeck appeared for Hamdi Ali Osman.

Glenn Greene and David G. Cutler, United States Department of Justice, appeared for
Heather Weyker.

---

      In her Second Amended Complaint, Hamdi Ali Osman asserted claims against the

City of St. Paul and members of the St. Paul Police Department under 42 U.S.C. § 1983

and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

(1971), for violations of the Fourth, Fifth, and Fourteenth Amendments.  In August 2017,

the Court dismissed Osman's claims against the City of St. Paul, John Bandemer, and

Robert Roes 1-3; dismissed Osman's claims against Heather Weyker for violations of the

Fifth and Fourteenth Amendments; and denied Weyker's motion to dismiss Osman's

claims under *Bivens* and § 1983 for violations of the Fourth Amendment.  Order 43, Aug.

9, 2017, ECF No. 94.  Weyker appealed.  The United States Court of Appeals for the

Eighth Circuit "vacate[d] the denial of Weyker's motion[] to dismiss" Osman's

complaint.  *Farah v. Weyker*, 926 F.3d 492, 503 (8th Cir. 2019).  The Eighth Circuit

instructed this Court "on remand to dismiss [Osman's] *Bivens* claim[] and determine

whether [Osman's] case[] may proceed under section 1983."  *Id.*

On remand, Weyker filed a Motion to Dismiss.  *See* Fed. R. Civ. P. 12(b)(6).

Weyker maintained that Osman's § 1983 claim for violation of the Fourth Amendment

should be dismissed because Weyker did not act under color of state law when Weyker

allegedly violated Osman's Fourth Amendment rights.  In addition, Weyker asserted that

she is entitled to qualified immunity.

Osman opposed Weyker's motion.  Osman asserted that the Court previously

considered a Rule 12(b)(6) motion from Weyker, that Rule 56(d) of the Federal Rules of

Civil Procedure precludes a motion for summary judgment at this stage of the case, that

Osman's Fourth Amendment claim may proceed under § 1983, and that Weyker is not

entitled to qualified immunity.

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A plaintiff satisfies this requirement by "plead[ing] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.*  "[T]he tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare

2

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)). The Court considers Weyker's motion under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d).

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v.*

3

*Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "Conduct causing a deprivation of civil rights must be 'fairly attributable' to the state to be considered under color of state law." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "The defendant must act or purport to act 'in the performance of official duties, even if he oversteps his authority and misuses power.' Acts of officials in 'the ambit of their personal pursuits are plainly excluded' from Section 1983 liability." *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (citation omitted) (quoting *Johnson v. Phillips*, 664 F.3d 232, 240 (8th Cir. 2011), and *Dossett v. First State Bank*, 399 F.3d 940, 949 (8th Cir. 2005)). "[W]hether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Id.* (alteration in original) (quoting *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997)). Section 1983 "is inapplicable to persons acting under color of federal law." *Haley v. Walker*, 751 F.2d 284, 285 (8th Cir. 1984) (per curiam).

"[A]n indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry." *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975); *accord Kaley v. United States*, 571 U.S. 320, 328-29 (2014).

Nevertheless, "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017) (citation omitted); *see Stewart v. Wagner*, 836 F.3d 978, 983 (8th Cir. 2016). If the legal proceeding used to establish probable cause is tainted such that probable cause is lacking, "then the ensuing pretrial detention violates the confined person's Fourth Amendment rights." *Manuel*, 137 S. Ct. at 920 n.8 (rejecting view that a grand jury indictment "does expunge such a Fourth Amendment claim"); *see King v. Harwood*, 852 F.3d 568, 587-88 (6th Cir. 2017).

Weyker maintained that Osman cannot sue Weyker under § 1983 because Weyker was a federally deputized task force member when the alleged Fourth Amendment violation took place. Weyker asserted that she "was deputized as a Special Deputy United States Marshal, sponsored by the Federal Bureau of Investigation, from August 24, 2010, through August 31, 2014"; that her "duties as a Special Deputy included investigative work on a task force supporting the FBI's investigation of approximately 30 subjects associated with Somali gangs"; and that "[t]his investigation led to the federal indictments, arrests, and detentions challenged by Osman . . . in this lawsuit." Because she was "federally deputized to work on the sex-trafficking task force when Osman . . .

5

[was] charged and arrested for federal crimes," Weyker maintained that "§ 1983 is simply not available."  Anticipating an argument that "the bulk of her alleged investigatory actions predated her federal deputation," Weyker asserted that "[t]here is no Fourth Amendment deprivation until an arrest without probable cause actually occurs"; that "evidence fabrication, standing alone, does not violate the Constitution"; that "[e]ven when an officer supplies corrupt evidence, an arrest does not offend the Fourth Amendment if other untainted evidence would have established probable cause at the time charges are procured or the arrest is made"; that "[i]f Weyker induced false statements from witnesses or fabricated false evidence *before* her federal deputation, she was obliged to disclose that to the prosecutors during the two-month period *after* becoming a federal officer and *before* allowing the federal prosecutors with whom she then worked to obtain [Osman's] indictment[]"; and that "the acts or omissions that directly caused [Osman's] alleged constitutional deprivation necessarily occurred under color of federal law."

Osman responded that she may sue Weyker under § 1983.  Osman asserted that "[t]he relevant temporal inquiry is when the wrongful act occurred, not when a plaintiff experienced damages"; that "the overwhelming majority of Weyker's wrongful conduct occurred **prior** to her deputation"; and that "all of the wrongful actions Weyker took prior to her deputation were under color of state law, and she is therefore liable under Section 1983 for her actions at that time that later caused the violations of Osman's rights."  Osman also argued that "whether Weyker was working under color of federal or state law, or at times both, is a question of fact, if not for the jury, at least in need of

further discovery." Finally, Osman asserted that she "has plausibly alleged that Weyker acted in concert with state actors after her deputation to deprive Osman of her constitutional rights."

"The manufacture of false evidence, 'in and of itself,' . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right." *Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000); *see Buckley v. Fitzsimmons*, 509 U.S. 259, 281 (1993) (Scalia, J., concurring) ("I am aware of[] no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution."); *Warnick v. Cooley*, 895 F.3d 746, 753 (10th Cir. 2018) ("[I]f 'an officer (or investigating prosecutor) fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process.'" (quoting *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016))); *Winslow v. Smith*, 696 F.3d 716, 735 (8th Cir. 2012) ("False evidence or evidence derived from a reckless investigation only violates a criminal defendants' due process rights if it is 'used to deprive the defendant of her liberty in some way.'" (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012))). In her Second Amended Complaint, Osman alleged that "Weyker was the lead Saint Paul Police investigator investigating a supposed sex-trafficking ring, and, at times, deputized as a member of an FBI Task Force on sex-trafficking" (2d Am. Compl. ¶ 17); that "Osman was indicted on several conspiracy counts" on October 20, 2010, and arrested on November 8, 2010 (*id.* ¶¶ 18-19); that "[t]he overwhelming majority of the material evidence supporting the indictments in this alleged conspiracy was fabricated

and then supplied to federal prosecutors by Weyker" (*id.* ¶ 27); that "Weyker provided fabricated, knowingly false, misleading, and/or exaggerated statements and evidence to federal prosecutors, various law enforcement personnel, and a federal grand jury in or about the Spring and/or Summer and/or Fall of 2010" (*id.* ¶ 30); that "the U.S. Attorney in Minnesota" reviewed the case and "correctly declined to prosecute it" (*id.* ¶ 44); that "Weyker added more fabricated evidence and took the case to [an Assistant United States Attorney] in Tennessee" (*id.*); and that "[b]y fabricating a staggering amount of evidence, Weyker convinced an Assistant United States Attorney in Tennessee to indict the refugees against whom she had concocted her imaginary case in the Middle District of Tennessee" (*id.* ¶ 37).  Weyker was deputized approximately two months before Osman was indicted and detained.  Thus, Weyker allegedly used the fabricated evidence to deprive Osman of Osman's Fourth Amendment rights when Weyker was both a St. Paul police officer and a federally deputized member of an FBI Task Force on sex-trafficking.

Before she was federally deputized, Weyker did not violate Osman's Fourth Amendment rights.  As a federally deputized "member of an FBI Task Force on sex-trafficking," Weyker acted under color of federal law, not state law, when she allegedly used fabricated evidence to "convince[] an Assistant United States Attorney in Tennessee to indict" Osman and to obtain Osman's detention.  *See King v. United States*, 917 F.3d 409, 433 (6th Cir. 2019)  ("Although Detective Allen was a detective with the Grand Rapids Police and was therefore employed by the state, Detective Allen was working full time with an FBI task force at the time of the incident at issue. . . .  As a deputized federal agent, Detective Allen carried federal authority and acted under color of that authority

rather than under any state authority he may have had as a Grand Rapids Police detective."), *cert. granted sub nom. Brownback v. King*, 140 S. Ct. 2563 (2020), and *cert. denied*, 140 S. Ct. 2565 (2020); *Guerrero v. Scarazzini*, 274 F. App'x 11, 12 n.1 (2d Cir. 2008) ("Guerrero framed his false arrest claims against Scarazzini and McAllister as arising under 42 U.S.C. § 1983; however, because Scarazzini and McAllister were federally deputized for their Task Force work, this claim was properly brought (as the parties agree) as a *Bivens* action."); *DeMayo v. Nugent*, 517 F.3d 11, 14 n.5 (1st Cir. 2008) ("DeMayo originally brought his claims without knowledge that Nugent and Lugas were part of a DEA task force, rendering 42 U.S.C. § 1983 the appropriate avenue for relief, although his complaint does not explicitly indicate whether the action lay under § 1983 or *Bivens*. The parties and the district court, however, all treated the suit as lying under *Bivens* after the officers' roles were revealed."). Weyker was not acting under color of state law when she allegedly violated Osman's Fourth Amendment rights.

Osman has not plausibly alleged that Weyker acted in concert with state actors after her deputation to deprive Osman of her constitutional rights. *See Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009) ("A federal officer who conspires with a state officer may act under color of state law; but since 'federal officials typically act under color of *federal* law,' they are rarely deemed to have acted under color of state law." (citation omitted)); *Premachandra v. Mitts*, 753 F.2d 635, 641 n.7 (8th Cir. 1985) (en banc) ("Conspiracies that make federal officials liable under section 1983 are not commonplace but nor are they unheard of."); *cf. Magee*, 747 F.3d at 536 ("To be liable under § 1983, a private actor must be a 'a willful participant in joint activity with the State' in denying a

plaintiff's constitutional rights." (quoting *Dossett*, 399 F.3d at 947)).  Osman alleged that "Weyker worked with almost no supervision by her employer and principal, the City of Saint Paul and its Police Department" and that "the vast majority of her reports were never reviewed or approved by her supervisors, in contravention of Department policy." (2d Am. Compl. ¶ 38)  Osman's claim against Weyker for violation of Osman's Fourth Amendment rights may not proceed under § 1983.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Weyker's Motion to Dismiss [Docket No. 119] is GRANTED.

2. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 30, 2020

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge